1
2
3
4
5
6
7
8

# IN THE UNITED STATES DISTRICT COURT

9

## FOR THE EASTERN DISTRICT OF CALIFORNIA

10

11  JOANNE M. DUNLAP,                         CASE NO. CV-F-09-1304 LJO SKO

12                      Plaintiff,            **ORDER ON DEFENDANTS' SUMMARY JUDGMENT MOTION** (Doc. 24)

13           vs.

14  FEDERAL DEPOSIT INSURANCE
    CORPORATION,
15
                        Defendant.
16  _____/

17                              **INTRODUCTION**

18          By notice filed on May 15, 2010, defendant Federal Deposit Insurance Corporation ("FDIC")

19  moves for summary judgment against plaintiff Joanne Dunlap ("Ms. Dunlap"), who is proceeding in

20  propria persona.  The issue presented is whether Ms. Dunlap's severance pay claim is a priority 1

21  "administrative expense," payable in cash, pursuant to 12 U.S.C. §1821(d)(11)(A)(i), or whether her

22  severance pay claim is  a priority 3 general creditor claim, payable by a receiver's certificate entitling

23  Ms. Dunlap to a *pro rata* share of the remaining assets, if any, of her former employer, County Bank.

24  Pursuant to the applicable provisions of the Financial Institutions Reform Recovery and Enforcement

25  Act of 1989 ("FIRREA"), and *Battista v. FDIC*, 195 F.3d 1113 (9th Cir. 1999), this Court finds that the

26  FDIC is authorized to pay Ms. Dunlap's severance claim by delivering a receiver's certificate, qualifying

27  her for a priority 3 pro rata share of County Bank's remaining assets, if any.  According, this Court

28  GRANTS FDIC's summary judgment motion and DIRECTS judgment in favor of Ms. Dunlap.

**BACKGROUND**[1]

**Undisputed Facts**

Ms. Dunlap was employed at County Bank as the Director of Human Resources and Senior Vice President from March 29, 2004 through February 6, 2009. Ms. Dunlap has a written Severance Agreement with County Bank that provided Ms. Dunlap with one year of salary if her employment with County Bank was terminated without cause. The Severance Agreement does not include an attorney's fees provision.

On February 6, 2009, the Commissioner of Financial Institutions for the State of California took possession of County Bank's business and property, and appointed FDIC as receiver of County Bank. FDIC accepted its appointment as receiver of County Bank on the same day. At 5:00 p.m. on February 6, 2009, a meeting was held in the County Bank lobby, and an FDIC representative informed all employees in attendance, including Ms. Dunlap, that their employment at County Bank had been terminated and that they would now be employees of On Call Staffing Performances performing duties for the FDIC. Thus, on February 6, 2009, Ms. Dunlap's employment with County Bank was terminated. At the time of termination, Ms. Dunlap's annual salary was $140,000.

Ms. Dunlap continued as an employee of On Call Staffing to perform services for the FDIC through March 26, 2009. Ms. Dunlap was terminated as an employee of On Call Staffing on March 26, 2009.

Ms. Dunlap submitted a "Proof of Claim Form" to the FDIC requesting payment of her severance in the amount of $140,000 ("severance claim"). The FDIC repudiated Ms. Dunlap's severance agreement. On May 27, 2009, Ms. Dunlap received from the FDIC a "Notice of Disallowance of Claim" stating that the FDIC as receiver of County Bank "has determined to disallow your claim for the following reason: Contract/Agreement repudiated."

On July 27, 2009, Ms. Dunlap initiated this action seeking $140,000, as damages for her severance agreement, and attorney's fees. Thereafter, on October 30, 2009, the FDIC advised Ms. Dunlap that it was prepared to allow Ms. Dunlap's claim, and provide her with a receiver's certificate

---

[1]The Court relies on the evidence presented by the parties in the record and cites to the most relevant for purposes of deciding this motion.

1   in the amount of $140,000.  On February 10, 2010, the FDIC again advised Ms. Dunlap that her claim

2   had been approved, and that the FDIC was prepared to provide her with a receiver's certificate in the

3   amount of $140,000.  After receiving these notices, on March 15, 2010, Ms. Dunlap amended her

4   complaint to allege that her claim is a "priority wage claim" which should be paid as an administrative

5   expense of the receiver.

6          FDIC remains prepared to allow Ms. Dunlap's claim, and pay it through a receiver's certificate.

7   Ms. Dunlap is unwilling to accept the receiver's certificate and seeks payments of her claim in cash.

8          As of September 30, 2009, County Bank's assets were $8,559,000 and its liabilities were

9   $158,768,000, resulting in a negative net worth of $150,209,000.

10                                      **Procedural History**

11         The FDIC moved for summary judgment on May 15, 2010.  Ms. Dunlap opposed the motion on

12   June 2, 2010.  The FDIC replied on June 15, 2010.  This Court found this motion suitable for decision

13   without a hearing, vacated the June 22, 2010 hearing pursuant to Local Rule 230(g), and issues the

14   following order.

15                                      **STANDARD OF REVIEW**

16         On summary judgment, a court must decide whether there is a "genuine issue as to any material

17   fact."  Fed. R. Civ. P. 56(c); *see also, Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970).  A party

18   seeking summary judgment bears the initial burden of establishing the absence of a genuine issue of

19   material fact.  *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  The moving party may satisfy

20   this burden in two ways: (1) by presenting evidence that negates an essential element of the nonmoving

21   party's case; or (2) by demonstrating that the nonmoving party failed to make a showing of sufficient

22   evidence to establish an essential element of the nonmoving party's claim, and on which the non-moving

23   party bears the burden of proof at trial.  *Id*. at 322.  "The judgment sought should be rendered if the

24   pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine

25   issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ.

26   P. 56(c).  "If the party moving for summary judgment meets its initial burden of identifying for the court

27   those portions of the material on file that it believes demonstrates the absence of any genuine issues of

28   material fact," the burden of production shifts and the nonmoving party must set forth "specific facts

3

1   showing that there is a genuine issue for trial." *T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n*,

2   809 F.2d 626, 630 (9th Cir. 1987)(quoting Fed. R. Civ. P. 56(e)).

3          To establish the existence of a factual dispute, the opposing party need not establish a material

4   issue of fact conclusively in its favor, but "must do more than simply show that there is some

5   metaphysical doubt as to the material facts." *Matsushita*, 475 U.S. at 587.  It is sufficient that "the

6   claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of

7   the truth at trial." *First National Bank of Arizona v. Cities Serv. Co*., 391 U.S. 253, 290 (1968); *T.W.*

8   *Elec. Serv.*, 809 F.2d at 631.  The nonmoving party must "go beyond the pleadings and by her own

9   affidavits, or by depositions, answer to interrogatories, and admissions on file, designate specific facts

10  showing that there is a genuine issue for trial." *Celotex*, 477 U.S. at 324.  Fed. R. Civ. P. 56(e) requires

11  a party opposing summary judgment to "set out specific facts showing that there is a genuine issue for

12  trial."  "In the absence of specific facts, as opposed to allegations, showing the existence of a genuine

13  issue for trial, a properly supported summary judgment motion will be granted." *Nilsson, Robbins, et*

14  *al. v. Louisiana Hydrolec*, 854 F.2d 1538, 1545 (9th Cir. 1988).

15         With these standards in mind, the Court turns to FDIC's arguments.

16                                    **DISCUSSION**

17         The parties agree that the Ms. Dunlap's severance claim is allowable.  In this motion, this Court

18  must determine how that claim is to be paid, and in what order of priority.  Ms. Dunlap argues that her

19  severance claim should be paid in cash, and as a priority 1, because it is an administrative expense of

20  the receiver.  The FDIC contends that the severance claim should be paid by receiver's certificate, and

21  as a priority 3 claim, because it is a general liability of County Bank.  Based on the applicable statutes

22  and case law, this Court finds that the FDIC may pay Ms. Dunlap's severance claim with a receiver's

23  certificate as a priority 3.

24         First, Ms. Dunlap is not entitled to have her severance claim paid in cash.  "There is no question

25  that the FDIC may pay creditors with receiver's certificates instead of with cash." *Battista v. FDIC,* 195

26  F.3d 1113, 1116 (1999).  The "FDIC may use receiver's certificates as its manner of payment because

27  requiring cash payments would subvert the comprehensive scheme of FIRREA, including 1821(i)(2)'s

28  limitation on an unsecured general creditor's claim to only a pro rata share of the proceeds from the

                                          4

1   liquidation of the financial institution's assets." *Id.* (citing *RTC v. Titan Fin. Corp.*, 36 F.3d 891, 892

2   (9th Cir. 1994)).  "To require the FDIC to pay certain creditors in cash would allow those creditors to

3   'jump the line,' recovering more than their pro rata share of the liquidated assets, if the financial

4   institution's debts exceed its assets." *Battista,*, 195, F.3d at 1117.

5        Second, Ms. Dunlap's severance claim is a general liability of County Bank, to be paid as a

6   priority 3 under FIRREA, and is not an "administrative expense" of the FDIC.  Section 1821(d)(11)(A)

7   of  FIRREA sets forth the distribution scheme of paying unsecured claims of an insolvent financial

8   institution as follows:

9        Subject to section 1815(e)(2)(C) of this title, amounts realized from the liquidation or
         other resolution of any insured depository institution by any receiver appointed for such
10       institution shall be distributed to pay claims (other than secured claims to the extent of
         any such security) in the following priority order:
11           (i)      Administrative expenses of the receiver.
             (ii)     Any deposit liability of the institution.
12           (iii)    Any other general or senior liability of the institution (which is not a
                      liability in clause (iv) or clause (v)).
13           (iv)     Any obligation subordinated to depositors or general creditors (which is
                      not an obligation described in clause (v)).
14           (v)      Any obligation to shareholders or members arising as a result of their
                      status as shareholders or members (including any depository institution
15                    holding company or any shareholder or creditor of such company).

16   Ms. Dunlap contends that her severance claim qualifies as an "administrative expense" pursuant to

17   Section 1821(e)(7)(B), which provides:

18       If, in the case of any contract for services described in subparagraph (A), the
         conservator or receiver accepts performance by the other person before the conservator
19       makes any determination to exercise the right to repudiation of such contract under this
         section–
20           (i)      the other party shall be paid under the terms of the contract for the
                      services performed; and
21           (ii)     the amount of such payment shall be treated as an administrative expense
                      of the conservatorship or receivership.
22

23   Ms. Dunlap argues that because she performed services after appointment of the FDIC as receiver and

24   prior to the FDIC's repudiation of her Severance Agreement, her severance agreement qualifies as an

25   administrative expense of the receiver.  Ms. Dunlap's argument fails for a number of reasons.

26        FIRREA defines "administrative expenses" as "those necessary expenses incurred by the receiver

27   in liquidating...a failed insured depository institution.  Such expenses shall include pre-failure and post-

28   failure obligations that the receiver determines are necessary and appropriate to facilitate the smooth and

5

orderly liquidation or other resolution of the institution." 12 C.F.R. §360.4. "*Generally administrative expenses do not include expenses such as severance pay claims*, golden parachute claims and claims arising from contract repudiation." 58 Fed. Reg. 43,069, 43,070 (1993) (quoted in *Battista*,195 F.3d at 1119) (emphasis added). In *Battista*, the court deferred to the FDIC's interpretation that the term "administrative expenses" excludes generally a severance claim, and concluded that the FDIC interprets contract repudiation claims are "not entitled to the same priority as administrative claims" under Section 1821(d)(11)(A). Like the Ninth Circuit, this Court gives significant deference to the agency's interpretation of its regulations, *Chevron U.S.A., Inc. v. Natural Resources Defense Council, Inc*., 467 U.S. 837, 844 (1984), and agrees that Ms. Dunlap's severance contract repudiation claim does not qualify as an administrative expense of the FDIC.

Moreover, Ms. Dunlap's interpretation of  Section 1821(e)(7)(B) misapplies the law and undisputed facts in this action.  Section 1821(e)(7)(B) allows repudiated "contracts for service" that continued under the receivership to be paid as administrative expenses.  The Severance Agreement is not a "contract for services" to qualify under Section 1821(e)(7)(B). Ms. Dunlap does not dispute that her contract for services with County Bank ended on February 6, 2009, the day the FDIC began its receivership.  It is further undisputed that Ms. Dunlap began employment with On Call Staffing to perform services for the FDIC from February 7, 2009 through March 26, 2009.  Thus, the FDIC repudiated her County Bank contract for services before it accepted her performance as an employee with On Call Staffing.  Ms. Dunlap's dispute over when the Severance Agreement was repudiated is immaterial.  Section 1821(e)(7)(B) applies only to services performed under a pre-conservatorship contract for services.  Based on the undisputed facts, Ms. Dunlap's severance claim does not qualify as an administrative expense.

Ms. Dunlap argues that her Severance Agreement qualifies as an administrative expense of the receiver because the agreement was "specifically crafted to induce employees to work extra hours, apply special effort to work with the FDIC in the event of a financial collapse of the bank, or work with the FDIC once the FDIC had taken over the failed institution."  These unsupported contentions are contradicted by the evidence.  Neither the Severance Agreement nor the Minutes of the Special Board of Directors Meeting on March 12, 2008, nor any other evidence submitted by Ms. Dunlap establish that

1  her Severance Agreement related to work to be performed by or for the FDIC.  Rather, the Severance

2  Agreement provides that it can be terminated "in the event that actions are effected by any regulatory

3  agency." Severance Agreement, attached to Declaration of Jeffrey M. Quick, Exh. 3; Declaration of

4  Joanne M. Dunlap, Exh. 2.  According to the County Bank Minutes of the Special Board of Directors

5  Meeting on March 12, 2008, the Severance Agreements were approved for "key team members" of

6  County Bank for the following reason:

7      A Change-in-Control situation was discussed and it was noted that if this Company was
        acquired and these Team Members were terminated, it would trigger the severance.
8      These key Team Members would be essential in completing the conversion successfully
        and would be included in the cost to the acquirer....A discussion was held relative to the
9      cost for the acquirer for these agreements since consultants have indicated that it should
        not be over 4%.

10

11  Declaration of Joanne M. Dunlap, Exhibit 1.  Thus, the Severance Agreements were meant to safeguard

12  key County Bank employees in the event of an acquisition, not dissolution or liquidation.

13      In addition, Ms. Dunlap's reliance on *McAllister v. RTC*, 201 F.3d 570, 578 (5th Cir. 2000) is

14  misplaced.  *McAllister* is inapplicable and distinguishable, as it considered whether alleged oral

15  representations to pay compensation by the RTC when it was conservator qualified that payment as an

16  administrative expense.  By contrast, the facts of this case are indistinguishable from *Battista*, wherein

17  a former employee argued that her repudiated severance claim qualified as an administrative expense

18  to be paid in cash as a priority 1.  This Court adopts the applicable ruling of *Battista*, a position this

19  Court is required to take.

20      Finally, Ms. Dunlap is not entitled to an award of attorneys' fees.  "Under the American rule,

21  generally applicable in federal litigation, each side shall pay its own attorney fees." *Monrad v. FDIC*,

22  62 F.3d 1169, 1174-75 (9th Cir. 1995) (quoting *Modzelewski v. Resolution Trust Corp.*, 14 F.3d 1374,

23  1379 (9th Cir. 1994)).  The Severance Agreement contains no attorneys' fees clause, and FIRREA

24  contains no clause for an award of attorneys' fees in this action.  Accordingly, the American rule applies,

25  each party shall bear its own costs.

26                              **CONCLUSION**

27      For the foregoing reasons, this Court ORDERS as follows:

28      1.      FDIC's summary judgment motion is GRANTED;

7

2.      The clerk of court is directed to enter judgment in favor of plaintiff Joanne M. Dunlap in the amount of $140,000, payable by receiver's certificate as a priority 3 general liability.

3.      Each party shall bear its own attorneys' fees.

4.      Ms. Dunlap may submit a bill of costs pursuant to this Court's local rules and forms.

IT IS SO ORDERED.

**Dated:    June 17, 2010**                    **/s/ Lawrence J. O'Neill**
                                                 UNITED STATES DISTRICT JUDGE